Robertson, Ch. J.
The main point in this ease is whether the legal title to an undivided two thirds of the lots in question passed by the deed from the official assignee in bankruptcy to the plaintiff That turns principally on the effect of the instrument of July, 1835, executed by Mr. Clarke and the two Dysons. The existence and contents of that instrument are fully proved by the admission made by Mr. D. S. Dyson in his answer to the bill of complaint of Mrs. Clarke against him and others. This was admissible in evidence as the declaration of a party in possession of lands claiming title, against his own interest. (1 Phil. on Ev. 527, 528, Cowen & Hill's Notes, Edwards’ ed.) And it only proves an instrument, which is not binding on purchasers unless they have notice of it, such notice may be found, in the admissions in the petitions and schedule in bankruptcy, through which such assignee derived his title. The previous agreement between the Bruens and Clarke is only important as showing *105 the consideration for the deed to D. S. Dyson, and establishing a right in Clarke to have the whole property conveyed to him by Bruen. Although he "may have assented to that deed to Dyson, so as to destroy any merely resulting trust, except for his creditors, (1 R. S. 728, § 52,) he is only affected thereby, so far as such deed interfered with his right to such conveyance. That deed to Dyson from Bruen, became by the instrument of July, 1835, converted into a mere mortgage to him, for the sums advanced by himself and brother, and a conveyance of the equity of redemption in an undivided third, and either a conveyance to Mr. Clarke of the remaining two thirds, or the grant of a power to D. S. Dyson, in trust "to sell and pay over the proceeds of sjich two thirds to Clarice; as a trust for that purpose would not be valid. (1 R. S. 727, §§ 45, 55.) If Dyson took such conveyance without the consent of Mr. Clarke, it of course would create a resulting trust in favor of the latter. (1 R. S. 728, § 53.)
In regard to the legal effect of the instrument of July, 1835, 1 think the recent decision in the Court of Appeals of this state, in the case of the New York Dry Dock Company v. Stillman, (30 N. Y. Rep. 176,) is conclusive. And as that is somewhat intricate, it will not be amiss to enter into a minute detail of the facts and the points decided.
The subject of controversy, in that case, consisted of "a fund, claimed to be the share of a certain Walter Smith, of the proceeds of the sale of certain land by persons, (Nevins & King,) alleged to be donees of a power in trust therein for his benefit. Its claimants were the plaintiffs, who as assignees of a junior judgment against Smith, had redeemed from a sale of his interest in such lands, on execution under a prior judgment obtained against him, and the defendant, who had bought all the interest of the judgment debtor in such lands or their proceeds, or in the execution of the power in trust, from a receiver *106 appointed in a suit by a creditor who had obtained a judg- f ment subsequent to both the judgments under which the plaintiffs claimed.
In 1834, the judgment debtor, (Smith,) had the legal title in fee to the land in controversy, and conveyed an undivided half thereof to a Mr. II. H. Kevins. On the first of March, 1838, some time before the recovery of any of such judgments, against Smith, he and Kevins conveyed all their interest in such land in fee to the latter. On the same day the latter conveyed it to a Mr. E. Townsend, who again, on the same day, conveyed it to Kevins and a Mr. O. C. King as joint tenants and not as tenants in common. Messrs. Kevins and King the next day executed two declarations of trust; one, in favor of the Kew York and Erie Railroad Company, and the other, in favor of certain parties originally interested in the first purchase of the land by Smith. The first of such instruments declared, that in case such company should- complete part of their railway between certain points, (Owego and Dunkirk,) within a certain time, (seven years from 1834,) the grantees, (Nevins & King,) would convey to such company one fourth of such lands as a free gratuity, or would sell such portion and pay them the proceeds. The second of such instruments declared that in case the company did not perform such conditions, the grantees would sell such lands and pay to the parties so originally interested, including the judgment debtor, (Smith,) the net proceeds thereof in certain prescribed portions. In 1850, after the purchase by the defendant from the receiver, and the redemption by the plaintiffs under their judgment, the company not having performed such condition, Messrs. Kevins King sold the share set apart for such company; Smith’s share of the proceeds of that sale, under the second declaration of trust, amounted to over eleven thousand dollars, which formed the subject of controversy, *107 in such action. The declaration of trust by Kevins & King, in favor of the railroad company, was made in pursuance of an agreement between Kevins and Smith, at the time of the conveyance by the latter to the former, providing for a conveyance and payment, similar to that which was contained in such declaration to be made to the company. The other declaration of trust by the same parties, was made in pursuance of an agreement entered into, in January previous, ‘to vest the whole title to the land in Kevins, to enable him to convey to each proprietor or party interested therein, the share which he had drawn by lot.
Upon the trial in the Supreme Court before a referee, he held that the authority of Messrs. Nevins & King to sell, was only good as a power in trust, and that the legal title remained in' Smith, which was acquired by the plaintiffs, who were therefore entitled to the fund. The general term of that court affirmed such decision, from which affirmance, the defendant appealed.
The turning point in the case evidently was, Whether the declaration of trust by Kevins & King in favor of the proprietors, (including Smith,) as to the portion of land set apart for the railroad company, (in case they failed to perform the condition attached,) converted the deed from Townsend (their grantor) into a conveyance of a legal estate to Smith, or left in Townsend the legal estate, subject to the execution by Kevins & King, (the grantees,) of the authority specified in such declaration of trust as a power in trust. J have been thus minute in noting the leading facts in the case, in order to show that such question was the turning point. It is true that the counsel for the plaintiffs contended, (p. 186,) that the three conveyances, on the 1st of March, 1838, (from Smith to Kevins, from the latter to Townsend, and from the last to the first two as joint tenants;) an agreement on the same day be *108 tween Kevins & King and the Kew York and Erie Kailroad Company; and the agreement made the next day between the former and all parties interested, formed but one transaction; and that, therefore, no legal title was vested in Kevins & King, in consequence of one provision of the Kevised Statutes, (1 R. S. 728, § 49;) but, on the contrary, by another, (Id. 727, § 47,) was vested in ' the parties for whose benefit such provision was made. It had been fully conceded that the authority of Kevins & King was void as a trust, and only good as a trust power, (p. 190.) The proposition so contended for by the plaintiff’s counsel was held, in one opinion, (Mullin, J. p. 192,) to be answered, (as expressed therein,) by the fact, that Smith “ conveyed the fee to Kevins, in that part of the land that was intended for the railroad company and Kevins, by a similar conveyance to Townsend. Keither took in trust, as in the conveyance to neither, was a trust expressed, and no declaration of trust was ever executed by either,” or, as the idea was more fully carried out in the second opinion delivered, (Selden, J. p. 196,) “that the reasoning by which ” such proposition “ is reached, assumes that the sole, object of the deed from Smith to Kevins, on the 1st of March, 1838, was to create that power in Kevins & King, in which the series of conveyances resulted;” whereas “ that conveyance was given in part execution of the plan adopted to carry into effect the division and distribution of the lands among all the joint proprietors. * * It was thought proper, for that purpose, to vest the whole title and interest, both-legal and equitable, in Kevins, and the deed from Smith was essential to that object. Unless that deed is held to have taken place according to its terms, the whole scheme of distribution was a nullity. There was nothing whatever to prevent its taking effect as designed, and hence, Smith, by its exe *109 cution, was completely divested of all legal title to the lands.” The judgment of the court below was unanimously reversed.
Several points were clearly settled by that decision, which are applicable to the case before me.
First. A declaration by the grantor in a deed of its objects and purposes, contained in a separate instrument, even when not under seal, (Laws of 1860, ch. 322,) may operate to alter the character of such deed, however plainly a conveyance of merely the legal estate in the land.
Second. Where instruments, simultaneously executed, relating to the same subject matter, are, for that reason, construed together, the general purpose of the whole, apparent therefrom, will control the strict construction or apparent purpose of one.
Third. Where, by the legal construction of one or more instruments, the sole purpose of one is apparently merely to create a trust, which can only be executed as a power in trust, although such instrument be an absolute conveyance in fee simple of the legal estate, such legal estate remains in the grantor in such instrument, subject to the execution of such power, (1 R. S. 734, §§ 58, 93; Id. 735, § 103,) which is capable of being enforced, in equity.
Applying this to the case in hand, it is very evident, from the declaration of trust executed by D. S. Dyson— for it is such, and not a mere covenant, since it speaks of the terms upon which the land is to he holden—that the purpose of the deed to him, as to the undivided two thirds claimed by Mr. Clarke, was not to vest a fee in Dyson, entitling him to dispose of it as he thought proper, and leaving in Clarke a mere right of action; but to give him a power in trust to sell and pay the proceeds to Clarke, leaving, whatever legal estate there was in Mr. Bruen, to be divested by the exercise of such power of sale. As much legal estate passed to Dyson, of course, *110 by such deed, to enable him to convey enough land to pay off his advances, as is usually vested in a mortgagee, and also a legal estate in one third for his own benefit, but, as to the residue, it remained in Mr. Bruen. There is no distinction in principle between a legal estate, so left undisposed of, and the legal estate conveyed to Mr. Townsend, in the case just cited, for the purpose of dividing the property. If the agreement and power of attorney to Mr. Clarke are to be taken into consideration, they show á right on his part to call on Bruen, either for a deed, or to sell the property at any time, as he had effected the compromise which entitled him thereto. Under the two instruments, Mr. Clarke had the right to enforce, in equity, a sale of his two third interest by Mr. Bruen or Mr. Dyson, by virtue of the power“in trust, or a conveyance by Mr. Bruen, or his representatives, of the legal estate to himself. At all events, therefore, if it has not been divested, such legal estate remained in Mr. Bruen, and could not be disposed of by the assignee in bankruptcy, which is fatal to the plaintiff’s case.
But, if the conveyance to Dyson bh supposed to be made without Clarke’s assent, he took it subject to the right of the latter to have a conveyance executed to him by Dyson. And as equity presumes that whatever ought to be done has been done, such a conveyance may be presumed. The admission in the petition and schedule in bankruptcy, is strong evidence "on this point. The first states that all his property is set out in the schedule. The latter claims only “ one third residuary interest in 204 lots, &c. as per deed of the same from Alexander M. Bruen,” and the accompanying note alleges that Mr. Clarke was “ entitled to, the remaining two thirds' interest arising from, any excess, after satisfying ” the mortgages therein. It does not state merely an interest in the execution of a power in trust, or the proceeds of sales thereunder, but in the *111 land itself. There is ample room in this to find, as a matter of fact, after the lapse of-seven years, between the deed and such admission, (which, of itself, would be a good declaration of trust,) that Dyson had actually released such undivided two thirds to Mr. Clarke.
But even if Dunbar S. Dyson acquired the legal title to such premises, by the deed to him, Mr. Clarke, or his representatives, would have a right to enforce the power of sale at any time, and even if Dyson’s legal title to two thirds were vested in the plaintiff, the title conveyed in this action on a sale, would not be such as this court would compel- a purchaser to take, because it would always be subject to be divested by the enforcement of such power. Unless, therefore, Mr. Clarke, or his representatives, be parties, the bill should be dismissed.
For these reasons, I think the complaint should be dismissed, with costs.